## The City of Chicago and the Holly Manufacturing Co. v. Fraser & Chalmers.

1. MUNICIPAL CORPORATIONS—*Authority to Make Contracts.*—No power exists either in the commissioner of public works or the mayor of the city of Chicago, or in both of said officers acting together, to enter into a contract for the erection of water pumping machinery to be employed in connection with the water works system of the city without previous authority of the city council and an appropriation therefor.

2. SAME—*Passage of Ordinances—The Yeas and Nays.*—The statute requiring that the yeas and nays shall be taken upon the passage of ordinances, and on propositions to create liabilities against the city, or for the expenditure or appropriation of its money, is not complied with by making up and passing what is called an "omnibus;" *i. e.*, many ordinances, from various departments of the city administration, which the law requires shall be adopted upon a "yea and nay" vote, are put together, and all passed by one roll call.

**Bill for an Injunction, etc.**—Appeal from the Circuit Court of Cook County; the Hon. OLIVER H. HORTON, Judge, presiding. Heard in this court at the October term, 1895. Affirmed. Opinion filed October 31, 1895.

WM. G. BEALE, corporation counsel, for the city of Chicago.

WILLIAM J. BULGER and JOHN MAYO PALMER, attorneys for the Holly Manufacturing Company, appellant.

Tenney, McConnell & Coffeen, attorneys for appellee.

Mr. Justice Shepard delivered the opinion of the Court.

This was a bill by appellee as a tax payer, in its own behalf, and of all other tax payers of the city of Chicago, for an injunction against the city from paying, out of any of the funds of the city, any of its money on account of a certain alleged contract between the city and the Holly Manufacturing Company, and that said contract be set aside and canceled; and from a decree as prayed, this appeal is prosecuted.

The contract in question, dated March 15, 1895, was entered into March 18, 1895, by the commissioner of public works of the city of Chicago, with the approval of the mayor, on behalf of the city, with the Holly Manufacturing Company, by which the company agreed to erect certain water pumping machinery to be employed in connection with the water works system of the city, for the sum of $275,668.

It appears that the finance committee of the city council of the said city had in contemplation the matter of additional pumping machinery, and that for the purpose of informing itself of the cost thereof, the said committee directed the commissioner of public works to advertise for bids therefor.

Accordingly bids were advertised for by the commissioner in the usual form, and bids were returned by various parties, including the Holly Manufacturing Company.

The letter of M. B. Madden, as chairman of the finance committee, to the commissioner, instructed him to advertise for bids, and to report the bids that might be received to the finance committee, and concluded with the statement that " it is understood, and I presume the contractors who are asked to bid should be so notified, that the bids are simply for information of the finance committee, which committee desires, in taking up this question, to know exactly what the necessary improvements will cost, after which it

will be decided whether or not it is desirable or feasible to make them."

That letter was dated July 11, 1894. Again on September 27, 1894, he wrote to the commissioner in relation to the same matter, and concluded, " I notice you have advertised as directed, and I am instructed by the finance committee, to request that no contract be let until the report (of the bids) be made as originally intended."

The bids that were received were opened by the commissioner on November 12, 1894, but no bid was accepted by him, and he was afterward directed by the finance committee to return to the bidders the checks which accompanied their bids, which was done. Up to that time the city council had not acted in the matter, and had made no appropriation of funds, in whole or in part, for the proposed machinery, and except that the finance committee of the council continued its inquiries, in order to be prepared to make some recommendation to the council in the future, no further action was taken until March 11, 1895.

At a meeting of the city council held March 11, 1895, certain orders or ordinances were passed in what is known as the " omnibus "; that is to say, there was but one roll call, and but one casting of votes upon a batch of several ordinances included in the " omnibus."

After that vote had been cast and recorded, and later in the evening, the following order was introduced by one of the aldermen with a request by him that it be placed in the " omnibus," and, no one objecting, the clerk of the council wrote up the minutes of the meeting so as to show the order in question to have been included in the " omnibus," and passed by the same yea and nay vote, when in fact it was not. The order referred to was as follows:

" Ordered. That the mayor and commissioner of public works be, and they are hereby directed to make such additions to the pumping capacity of the several pumping engines and boilers, as in their judgment may be necessary to furnish the inhabitants of the city with an abundance of water, and that one hundred and fifty thousand ($150,000)

dollars be, and hereby is, appropriated from the water fund of the city of Chicago, for the commencement and continuance of this work during the year 1895."

The testimony of the clerk of the council shows the method pursued and the fact that there was no yea and nay vote taken. It was as follows:

" The Court: How did it happen these minutes show a yea and nay vote if there was no such vote taken?

A. When the order was introduced in the council Alderman Ryan asked that the order be placed in the omnibus vote, and previous to the passage of this order a number of department ordinances for street improvements, sidewalks, etc., were passed by a yea and nay vote, and that is called the " omnibus " vote of the council. It is the practice of the council that an alderman may ask, if there is no objection, and have the order included in the roll call, which he did. Alderman Ryan moved that it be put in the omnibus roll call, and then we drew up our minutes showing that the order was passed by a yea and nay vote, viz., by the omnibus vote; but the council does not take any yea and nay vote in fact. The omnibus vote had been taken before Mr. Ryan introduced his order, and he asked it to be put back on the omnibus vote—in the yea and nay roll call. There was no yea and nay vote on putting it in—the council consented that it be put in."

By agreement of counsel it was admitted that the order " referred to was passed in the manner described by Aldermen Powers, according to established usage. And it was further agreed that when it was introduced, and partially read, it was read a second time by request of some alderman."

The testimony of that alderman was as follows:

"I was present at the council meeting on March 11, 1895, when the order for $150,000 appropriation was introduced. The order was regularly presented during the call of wards. The aldermen from the fifteenth ward presented the order and it was read, and Alderman Ryan asked to have it placed in the " omnibus," which is a lot of ordinances sent from

the various departments. They are all read at one time; the caption is read off by the clerk, and the vote taken at the same time on all. Of course, in the records, each ordinance appears to have been passed by a yea or nay separately, although there is only one vote taken. So when it came to the regular call of wards, Alderman Ryan asked to have it placed in the omnibus. There was no objection, and it was done.

The omnibus had been passed previous to that.·

There was no objection to this ordinance being put in the omnibus bill. The yea and nay vote on putting this in the omnibus bill was only as I say. There was no roll call on that specific order at that time, nor at any time, as I remember. It is a usual thing in the council if there is no objection."

Cross-examination: " The first order in meetings of the council is communication from the mayor and heads of departments and then all the department ordinances are taken up. The caption of each ordinance is read by the clerk, and then a vote taken on the whole, one roll call on the entire; that is what we call the omnibus.

By unanimous consent the roll is called once, and the record shows that each one had a roll call separately. The minutes, as printed afterward, show that each ordinance is reported passed separately. On this night when Mr. Ryan introduced the order it was read once I know, and consent asked and given that it be placed in the omnibus bill. That was on the 11th. I was present on the 18th when the matter came up. It may have been that the order, when introduced by Alderman Ryan, was read a second time."

The next regular meeting of the common council was held a week later, on March 18, 1895, and at that meeting the approval of the minutes of the last meeting, on March 11th, being in order, it was moved and carried that the said minutes be corrected by striking out the yea and nay vote on the order in question.

In the interval between the two council meetings of March 11th and March 18th, the contract in question was entered into.

City of Chicago v. Fraser & Chalmers.

We will not extend this opinion by incorporating into it the several sections of the act relating to the incorporation of cities, or the several ordinances of the city of Chicago bearing upon the question of the validity of this contract.

It is enough to say, considering them all, that no power existed, either in the commissioner of public works, or in the mayor, or in both of said officers acting together, to enter into a contract of this character, without previous authority of the city council, and an appropriation therefor.

It is not pretended that any such authority was given or appropriation made, except by the order of March 11, 1895, above copied.

The evidence that was heard relating to the passage of that order, is all that is needed to condemn it.

There was never a yea and nay vote taken upon its passage as is required by the statute, and even the form of having it so appear upon the journal of the council, was denied by the council itself at its next meeting, and while the matter was within the control of that body.

Neither is the contract in any manner aided by the claimed reliance by the Holly Manufacturing Company upon the record of the council proceedings as they stood within the week that elapsed between the purported passage of the order and the striking from the minutes of the council of the fictitious record.

That company, by its representatives, was a bidder for the work some four months before, and received back, as did all other bidders, the check it had deposited as an earnest of its willingness to contract in accordance with its bid, and so participated in the subsequent inquiries pursued by the finance committee as to be charged with notice, if none was expressly given when its check was returned, about which there is some uncertainty, that no contract was intended to be let under the bids that were advertised for. The general agent of the company testified that the contract in question, although dated March 15, 1895, was not in fact signed by him until the following Monday, March 18, 1895, which was the same day on which the council struck from its minutes the record of the passage of the order.

It also appears by his testimony that the works of the company are located in Lockport, New York, and it does not require argument to free the question from all equitable consideration on the ground of expense incurred upon the faith of the contract, no expense being proved.

We think the decree of the Circuit Court was right, and it is affirmed.